# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

-----------------------------------------------

In re:

Dennis E. Hecker,

        Debtor.

-----------------------------------------------

Randall L. Seaver, Trustee,

        Plaintiff,

vs.

William Prohofsky,

        Defendant.

-----------------------------------------------

BKY No. 09-50779
ADV No. 10-_____

**COMPLAINT**

        Randall L. Seaver, Trustee of the Bankruptcy Estate of Dennis E. Hecker as and for his Complaint against William Prohofsky, states and alleges as follows:

        1.      Trustee is the duly appointed Chapter 7 Trustee of the bankruptcy estate of the debtor.

        2.      This bankruptcy case was commenced on June 4, 2009 by the filing of a voluntary Chapter 7 petition.

        3.      This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

        4.      This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334.  This case arises under 11 U.S.C. §§541, 542, 548 and 550.

5.     William Prohofsky is a friend of the debtor, Dennis Hecker.  At one time, Prohofsky was married to the mother of Tamitha Hecker.  Tamitha Hecker is the former spouse of Dennis Hecker.

6.     In the two weeks prior to filing his bankruptcy petition, Dennis Hecker and William Prohofsky conspired to and did create and effect a scheme to defraud the bankruptcy estate.

7.     Hecker, in the two weeks prior to filing bankruptcy, with the consent, agreement and assistance of William Prohofsky, caused business entities, which Hecker controlled, to transfer into a Wells Fargo account of William Prohofsky, ending in numbers 2073 ("Prohofsky Account") in excess of $80,000 ("Hecker Funds").  Those transfers and the source of funds for those transfers were as follows:

| | | |
|---|---|---|
| May 22, 2009 | $ 5,000.00 | Walden Auto Leasing III, Inc., check #1031.  Ex. 1 |
| May 22, 2009 | $23,000.00 | Walden Auto Leasing Holding Co., check #1124. Ex. 2. |
| May 28, 2009 | $20,500.00 | Wire transfer from U.S. Bank. |
| June 4, 2009 | $33,057.00 | Wire transfer from Walden Fleet Services account at Bank of the West.  Copy of the wire transfer confirmation is attached hereto as Exhibit 3. |
| | $81,557.00 | |

8.     The Hecker Funds monies were deposited into the Prohofsky Account at the direction of Hecker with the intention of secreting and concealing from the trustee and others, monies being concealed for the sole use and benefit of Hecker.

9.     After deposit of the Hecker Funds into the Prohofsky Account, Dennis Hecker provided specific and exclusive direction to William Prohofsky in the use of those funds.  Those funds at the direction of Hecker, were used for payment of the bills of Dennis Hecker, and to

provide cash and gift cards to Hecker and Christi Rowan. Copies of some of the checks written from the Prohofsky Account at the direction of Hecker to pay Hecker's bills are attached hereto as Exhibit 4.

10.     On June 11, 2009, $10,000 in gift cards were purchased with Hecker Funds from the Prohofsky Account. Histories for two of those gift cards are attached hereto as Exhibits 5 and 6.

11.     A copy of check number 8787 in the amount of $5,000 payable to Christi Rowan from the Prohofsky Account is attached hereto as Exhibit 7. A copy of check number 8835 in the amount of $9,800 payable to Christi Rowan from the Prohofsky Account is attached hereto as Exhibit 8.

12.     Hecker provided instructions, at all relevant times, to Prohofsky, as to how the Hecker Monies contained in the Prohofsky Account were to be spent. At Hecker's direction, Prohofsky wrote over 50 checks from the Prohofsky Account for Hecker's benefit. Attached hereto as Exhibit 9 is a true and correct copy of a handwritten ledger sheet directing Prohofsky to make certain payments. These checks were written post-petition and were cashed post-petition.

13.     Prohofsky was directed to pay by check all items on the document attached hereto as Exhibit 10. All of these checks were written pre-petition and were cashed both pre- and post-petition.

14.     Prohofsky wrote checks on the Prohofsky Account as directed by Dennis Hecker. When he wrote those checks, Prohofsky wrote the check numbers next to the payment instructions.

15.     On June 4, 2009, the day the date Hecker filed his Chapter 7 petition, the Prohofsky Account had a balance of in excess of $53,000. Almost all of the money in the Prohofsky Account on the day of filing became property of the bankruptcy estate.

16.     Neither Dennis Hecker nor William Prohofsky voluntarily disclosed the existence of the Prohofsky Account to the trustee. The trustee learned of the existence of the Prohofsky Account only as a result of serving a subpoena upon Prohofsky. Attached hereto as Exhibit 10 are copies of the cover page and pages 17-28, 45-52 and 65-72 of the February 10, 2010 Rule 2004 Examination of William Prohofsky.

17.     In exchange for Prohofsky conspiring and agreeing with Hecker to participate in the scheme to defraud the bankruptcy estate, Hecker caused his companies to pay Prohofsky monies in addition to the $81,557 described at paragraph 7 hereof. Those monies exceeded $15,000, and were monies under the control and direction of Dennis Hecker.

## COUNT 1

### FRAUDULENT TRANSFERS

18.     Plaintiff realleges and reaffirms paragraphs 1 through 17 above.

19.     The transfers to Prohofsky in the amount of $81,557 were fraudulent transfers of monies over which Dennis Hecker had complete and exclusive control. The transfers totaling

$81,557 were made with actual intent to hinder, delay and defraud the trustee and creditors of Hecker.

## Count 2

### Estate Property

20.     Plaintiff realleges and reaffirms paragraph 1 through 19 above.

21.     Upon the filing of Hecker's Chapter 7 petition on June 4, 2009, all of the Hecker Funds in the Prohofsky Account became property of the bankruptcy estate. The account balance on the day of filing was $53,422.95, and almost all of these funds were estate property.

22.     Prohofsky was required, by the provisions of 11 U.S.C. §542(a) to turnover those funds to the trustee.

23.     Prohofsky did not turn over those funds to the estate but rather, concealed them and continued to participate in the scheme whereby those funds were concealed from the trustee.

24.     Prohofsky is liable to the estate for the sum of at least $50,000.

## Count 3

25.     Plaintiff realleges and reaffirms paragraph 1 through 24 above.

26.     In addition to the $81,557 received by Prohofsky, he also received in excess of $15,000 as payment for his role in the scheme and conspiracy to hide assets from the trustee.

27.     Because all monies received by Prohofsky pursuant to the scheme were monies under the exclusive control and direction of the debtor, they are assets of Hecker which were transferred to Prohofsky with the intent to hinder, delay or defraud creditors and the trustee.

28.     All of those transfers, which total in excess of $15,000, are avoidable pursuant to 11 U.S.C. §548 and recoverable by the trustee pursuant to 11 U.S.C. §550.

WHEREFORE, the trustee respectfully requests a judgment of the court as follows:

1.     Entering judgment against the defendant in the amount of $81,557 pursuant to Count 1 hereof.

2.     Entering judgment against the defendant in an amount of not less than $50,000 pursuant to Count 2 hereof.

3.     Entering judgment against the defendant in an amount in excess of $15,000 pursuant to Count 3 hereof.

4.     Awarding the plaintiff his costs and disbursements herein.

5.     Granting such other and further relief as the court deems just and equitable.

LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD.

Dated: February 24, 2010

By: /e/ Matthew R. Burton
    Matthew R. Burton          #210018
    100 South Fifth Street, Suite 2500
    Minneapolis, MN 55402
    (612) 332-1030

Attorneys for Randall L. Seaver, Trustee

Vendor No. PR000B   William Prohofsky

Check Date  05/22/2009     Check No.    1031

1031

| INVOICE DATE | INVOICE NO. | ACCT NO SUB ACCT CONTROL ID | | AMOUNT(S) | PAID AMOUNT(S) |
|---|---|---|---|---|---|
| 05/22/2009 | 1031 | 6502B | 300 | | |
| MANAGEMENT FEE | | | | 5,000.00 | |
| | | | | 5,000.00 | 5,000.00 |
| | | | Total | | 5,000.00 |

2
2-10-10

CHRISTI

Chrisi Rausa

---

**WALDEN AUTO LEASING III, INC.**
500 FORD ROAD
MINNEAPOLIS, MN 55426

USBANK
24-84/1230

CHECK NO.   1031

PAY

1031

FIVE THOUSAND AND 00/100 DOLLARS**************************************************************

| | DATE | AMOUNT |
|---|---|---|
| | 05/22/2009 | $5,000.00 |

TO THE
ORDER
OF

William Prohofsky
10401 Cedar Lake Road
Unit 303
Minnetonka, MN 55305

TWO SIGNATURES REQUIRED

Thomas R S Clem

**EXHIBIT  1**

⑈001031⑈   ⑆848⑈   518⑈        PROHOFSKY 15

LDEN AUTO LEASING HOLDING CO.   500 FORD ROAD   MINNEAPOLIS, MN 55426

ndor No. PRO00B   William Prohofsky        Check Date   06/22/2009      Check No.   1124

| INVOICE DATE | INVOICE NO. | ACCT NO SUB ACCT CONTROL ID | AMOUNT(S) | PAID AMOUNT(S) |
|---|---|---|---|---|
| 05/22/2009 | 1124 | 60111   900 | 23,000.00 | |
| EXPENSE REIMBURSEMENT | | | 23,000.00 | 23,000.00 |
| | | | Total | 23,000.00 |

2-10-10

WALDEN AUTO LEASING HOLDING CO.      USBANK
         500 FORD ROAD              24-84/1230
         MINNEAPOLIS, MN 56426                          1124

                                                 CHECK NO.

                                                   1124

AY     TWENTY THREE THOUSAND AND 00/100 DOLLARS************************************************************

                                      DATE            AMOUNT

                                       05/22/2009       $23,000.00

O THE     William Prohofsky
RDER     10401 Cedar Lake Road
         Unit 303
         Minnetonka, MN 55305               TWO SIGNATURES REQUIRED

                                                        PROHOFSKY 14

# EXHIBIT 2



⑈001124⑈    ⑆    ⑆848⑆         9492⑈

## Denny Heckers Automotive Group Inc

Customer Id: 400963
User Name: TOMSCH01
18-Jun-2009 01:02:18 PDT
**Wire Detail Report**

| | | | |
|---|---|---|---|
| **Msg Type** | FED | **Account** | BOW \| 397000571 \| Walden Fleet Services II Inc \| USD |
| **Amount** | 33,057.00 | **Value Date** | 04JUN2009 |
| **Beneficiary Bank** | WELLS FARGO BANK, NA - F/121000248 SAN FRANCISCO CA SAN FRANCISCO, CA US | **Beneficiary Info** | WILLIAM PROHOFSKY ⬛⬛⬛2073 |
| **Status** | CONFIRMED | **Sequence #** | 83 |
| **Confirmation Message** | IMAD: ⬛⬛⬛⬛⬛175 Ref: ⬛⬛⬛⬛255 | | |
| **Control #** | ⬛⬛⬛8292 | **Wire Ref #** | ⬛⬛⬛1255 |

| | |
|---|---|
| **Entered on:** | 03JUN2009 |
| **Created on:** | 2009-06-03 at 14:27:30 by TOMSCH01 |
| **Modified on:** | 2009-06-04 at 06:56:22 by TOMSCH01 |
| **Approved on:** | 2009-06-04 at 07:01:06 by RICHAG01 |
| **Released on:** | 2009-06-04 at 07:01:06 by RICHAG01 |
| **Placed in In-Process on:** | 2009-06-04 at 07:01:10 by IISI |
| **Confirmed on:** | 2009-06-04 at 07:01:19 by IISI |
| **Confirmed on:** | 2009-06-04 at 07:01:21 by IISI |

**End of Data**

# EXHIBIT 3

PROHOFSKY

**WILLIAM J PROHOFSKY**
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8791

17-1/910 210
007037207³

Date 5·29·°⁹

Pay to the
Order of ___Beck_____ | $ 800⁷

_E(ght Hundred_____ Dollars

WELLS FARGO  Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

For _____

⸬091000019⸬: ██████2073⸮ 08791⸮



ELECTRONICALLY PRESENTED - 1

| | |
|---|---|
| R/T Number | 009100001 |
| Sequence Number | 000000284276833 |
| Account Number | ████2073 |

| | |
|---|---|
| Processing Date | 20090601 |
| Amount | 000000080000 |
| Serial Number | 000000000008791 |

**EXHIBIT 4**

IBTRMN1260945:16X1257502A

**WILLIAM J PROHOFSKY**
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8800

17-18/910 210
0070372073

0016951758    5-39-09   Date

Pay to the
Order of _Inter Bank_    $ 1116 46

_One Thousand One Hundred Sixteen 46_ Dollars

Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

For _____

⑆091000019⑆ ⬛⬛⬛⬛ 2073⑈ 08800

CENLAR

Credit the account of the within named payee
without prejudice PEG-REGULUS RP

| R/T Number | 009100001 | Processing Date | 20090503 |
|---|---|---|---|
| Sequence Number | 000008815556965 | Amount | 0000111646 |
| Account Number | ⬛⬛⬛2073 | Serial Number | 0000000000008800 |

**WILLIAM J PROHOFSKY**
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8801

07-1/910 210
0070372073

5-29-09 _Date

Pay to the
Order of _N. TRO GREEN_____ $ 1774 35/

One Thousand Seven Hundred Seventy Four 33/ _Dollars_

WELLS
FARGO
Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

For _____

⑆091000019⑆ ██████ 2073⑈ 08801



Americana Community Bank ███ 369<
██████ 06/01/2009 2

PAY TO THE ORDER OF
AMERICANA
COMMUNITY BANK
MAPLE GROVE, MN 55311
FOR DEPOSIT ONLY
NITRO GREEN PROFESSIONAL
LAWN AND TREE CARE

| | | | |
|---|---|---|---|
| R/T Number | 009100001 | Processing Date | 20090602 |
| Sequence Number | 000000285239551 | Amount | 0000177433 |
| Account Number | ████2073 | Serial Number | 0000000008801 |



WILLIAM J PROHOFSKY
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8802

17-1/910 210
0070372073

5-29-09 Date

Pay to the
Order of: NORTH RIDGE FARMS ASSOCIATION $ 2346 00

Thousand Three Hundred Forty Six Dollars

Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

For

⑆091000019⑆ 2073⑈ 08802



| | |
|---|---|
| R/T Number | 009100001 |
| Sequence Number | 000004140664822 |
| Account Number | 2073 |

| | |
|---|---|
| Processing Date | 20090610 |
| Amount | 0000234600 |
| Serial Number | 000000000008802 |



**WILLIAM J PROHOFSKY**
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8809

37-1/910 210
0070372073

5-29-09 Date

Pay to the
Order of _Prudential_ $ 1352 xx

One Thousand Three Hundred Fifty Two xx Dollars

WELLS FARGO
Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

1,352.00

For _____

⑆091000019⑆ 2073⑈ 08809 ⑈9000135200⑈

41
CREDIT ACCT OF
NEW YORK
END GUAR
56

MAN

| | |
|---|---|
| R/T Number | 009100001 |
| Sequence Number | 000008845286959 |
| Account Number | 2073 |

| | |
|---|---|
| Processing Date | 20090510 |
| Amount | 0000135200 |
| Serial Number | 0000000000008809 |



WILLIAM J PROHOFSKY 456 A
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8813

17-1/910 210
1070372073

5-24-09 Date

Pay to the
Order of ___ROARING FORK___ $ 36⁹³

Thirty Six 93/___ Dollars

WELLS FARGO
Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

For _____

⑆091000019⑆ 2073⑈ 08813



PAY TO THE ORDER OF VECTRA BANK
COLORADO DENVER, CO ▮▮▮ FOR
DEPOSIT ONLY ROARING FORK LODGE
SNOWMASS ▮▮▮▮

R/T Number 009100001
Sequence Number 000008845151516
Account Number ▮▮▮▮72073

Processing Date 20090510
Amount 0000003693
Serial Number 000000000008813

**WILLIAM J PROHOFSKY** 456
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8814

17-1/910 210
0070372073

5-34-09 Date

Pay to the
Order of ROARING FORK    $ 202

Two Hundred Two _____ Dollars

WELLS FARGO
Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

For _____

⑆091000019⑆ 2073⑈ 08814

PAY TO THE ORDER OF VECTRA BANK
COLORADO DENVER, CO FOR
DEPOSIT ONLY ROARING FORK LODGE
SNOWMASS

| | | | |
|---|---|---|---|
| R/T Number | 009100001 | Processing Date | 20090510 |
| Sequence Number | 000008845151515 | Amount | 0000020200 |
| Account Number | ██████2073 | Serial Number | 000000000008814 |



WILLIAM J PROHOFSKY
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

LOOK UP     8816

117-1/910 210
0070372073

5-24-64  Date

Pay to the
Order of   U S BANK                        $ 3421 64

Three
Thousand Fourhundred Twenty-one 64/     Dollars

Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

4037 6919 6800 0062

For

⑆091000019⑆  2073⑈  08816   ⑆0000342164⑆

R/T Number          009100001
Sequence Number     000008822461461
Account Number      ⬛⬛⬛⬛2073

Processing Date     20090605
Amount              00003421654
Serial Number       0000000000008816



WILLIAM J PROHOFSKY
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

952-546-1633

8852

6-30-09
Date

Pay to the
Order of  Lloyd Security, Inc        $ 1335.00

One Thousand Three Hundred Thirty Five 00/        Dollars

WELLS FARGO
Wells Fargo Bank, N.A.
Mariners·
wellsfargo.com

Invoices 8443 & 8016

For 122017 & 122337

⑆091000019⑆        2073⑈ 08852



1520081848137    8881    071389    >891

PAY TO THE ORDER OF
PRIVATE BANK MN MBB9TA
MINNEAPOLIS MN 554 55TA
FOR DEPOSIT ONLY
LLOYD SECURITY INC

| | | |
|---|---|---|
| R/T Number | 009100001 | |
| Sequence Number | 000008883469856 | |
| Account Number | 2073 | |

| | |
|---|---|
| Processing Date | 20090713 |
| Amount | 0000133506 |
| Serial Number | 0000000000008852 |



WILLIAM J PROHOFSKY
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8859
17-1/910 210
0070372073

630-09 Date

Pay to the
Order of _Moss + Barnett_ | $ 1091%

_One Thousand Ninty One_ Dollars

Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

_Invoice 565411_ 27685

For _Client 27685_

⑈091000019⑈ ██████073⑈ 08859 ⑈0000109100⑈





M&I BANK (M-U)
MILWAUKEE, WI

J665

| | |
|---|---|
| R/T Number | ███0001 |
| Sequence Number | ███████89376 |
| Account Number | ███073 |

| | |
|---|---|
| Processing Date | 20090709 |
| Amount | 0000109100 |
| Serial Number | 000000000008859 |



WILLIAM J PROHOFSKY
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8864

6-30-09 Date

Pay to the
Order of _Premier Aquarium_ | $ 500ᵒᵒ

_Five Hundred_ — — — — — — Dollars

Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

For _Dennis Hecker_

⑈091000019⑈ 2073⑈ 08864 ⑈00000050000⑈

R/T Number          009100001
Sequence Number     000008881956419
Account Number      ███████72073

Processing Date     20090730
Amount              0000050000
Serial Number       00000000008864

**WILLIAM J PROHOFSKY**
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8866

37-1/910 210
0070372073

6-30-09
Date

Pay to the
Order of  WRIGHT HENNEPIN                          $ 1441 00/xx

One Thousand Four Hundred Forty one ————— Dollars

WELLS FARGO  Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

For  1493 HUNTER Dr

⑈091000019⑈        2073⑈  08866

MP

DEPOSIT ONLY ▪▪▪▪▪▪ WH ELEC & SECUR

FNB ELKRIVER>▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

| R/T Number | 009100001 | Processing Date | 20090709 |
|---|---|---|---|
| Sequence Number | 000008880467346 | Amount | 000144100 |
| Account Number | ▪▪▪▪2073 | Serial Number | 000000008866 |



**WILLIAM J PROHOFSKY**
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

HECKE

8867

'17-1/910 210
0070372073

6-30-09

Date

Pay to the Order of _THE TIMBER CLUB_ | $ 671 50/100

_SIX HUNDRED SEVENTY ONE_ 50/100 _____ Dollars

Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

For _DELLOY + TAMITHA HECKER_

⑆091000019⑆ ⬛⬛⬛073⑈ 08867



PAY TO THE ORDER OF
ALPINE BANK
FOR DEPOSIT ONLY
TIMBERS CLUB HOMEOWNERS ASSOC.

| | | |
|---|---|---|
| R/T Number | 009100001 | |
| Sequence Number | 000008884923473 | |
| Account Number | ⬛⬛⬛2073 | |

| | | |
|---|---|---|
| Processing Date | 20090714 | |
| Amount | 0000067150 | |
| Serial Number | 0000000000008867 | |



WILLIAM J PROHOFSKY
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8871

6-30-09

Pay to the
Order of _C.ty of Medina_ $ 75⁰⁰

_Seventy five_ Dollars

WELLS FARGO
Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

Invoice 3154

For _Dennise Hecker_

⑈091000019⑈ ⑈73⑈ 08871⑈



PAY TO THE ORDER OF
Farmers State Bank of Hamel
FOR DEPOSIT ONLY
City of Medina

| | | |
|---|---|---|
| R/T Number | 009100001 | |
| Sequence Number | 000000284893252 | |
| Account Number | 2073 | |
| Processing Date | 20090710 | |
| Amount | 0000007500 | |
| Serial Number | 000000000008871 | |

| System Date | Post Date | Merchant / Event | Amount | Reference | R |
|---|---|---|---|---|---|
| 08/13/2009 | 08/15/2009 | Purchase - Service Stations (with or without Ancillary Services) | $2.94 | 2471705922669226341|Fail | 4684 |
| HOLIDAY STNSTORE 3551 | | ST. LOUIS PAR      MN US | | | |
| 08/12/2009 | 08/14/2009 | Purchase - Service Stations (with or without Ancillary Services) | $0.43 | 2471705922569225249|Fail | 5992 |
| HOLIDAY STNSTORE 0039 | | MINNETONKA      MN US | | | |
| 08/10/2009 | 08/12/2009 | Purchase - Eating Places, Restaurants | $2.94 | 2401339922300957256|Fail | 4147 |
| ISLES MARKET | | MINNEAPOLIS      MN US | | | |
| 08/10/2009 | 08/11/2009 | Purchase - Quick Payment Service, Fast Food Restaurants | $5.45 | 2476197922074624011|Fail | 277 |
| WHITE CASTLE 080026084 | | HOPKINS      MN US | | | |
| 07/30/2009 | 08/01/2009 | Purchase - Quick Payment Service, Fast Food Restaurants | $4.19 | 2416407921235546102|Fail | 2343 |
| STARBUCKS USA 00210369 | | HONOLULU      HI US | | | |
| 07/28/2009 | 07/30/2009 | Purchase - Eating Places, Restaurants | $1.18 | 2401339921000914338|Fail | 4145 |
| ISLES MARKET | | MINNEAPOLIS      MN US | | | |
| 07/28/2009 | 07/28/2009 | Purchase - Men's and Women's Clothing Stores | $63.28 | 2407105920833014274|Fail | 7089 |
| UNDER ARMOUR | | ASPEN      CO US | | | |
| 07/28/2009 | 07/28/2009 | Purchase - Gift, Card, Novelty, and Souvenir Shops | $229.11 | 2401951920820829617|Fail | 8103 |
| RADIO BOARD SHOP | | ASPEN      CO US | | | |
| 07/22/2009 | 07/23/2009 | Purchase - Women's Ready to Wear Stores | $190.00 | 2443565920286199900059 |Fail| |
| A.P.C. SERVICE | | 2129960069      NY US | | | |
| 08/11/2009 | 06/11/2009 | Value Load - n/a | $500.00 | 0 | |
| WELLS FARGO A2A ONLINE | | | | CC0062916C2D | |

Printed 2/4/2010 7:28 AM

EXHIBIT 5

| System Date | Post Date | Event | | | Amount | R |
|---|---|---|---|---|---|---|
| Purse | | Merchant | | | Reference | |
| 07/30/2009 | 08/01/2009 | Purchase - Women's Accessory and Specialty Stores | | | $500.00 | Fals |
| Wells Fargo Store Np | | LOUIS VUITTON WAIKIKI | HONOLULU | HI US | 00034 | |
| 06/11/2009 | 06/11/2009 | Value Load - n/a | | | $500.00 | 0 |
| Wells Fargo Store Np | | WELLS FARGO A2A ONLINE | | | CC003038408C | |
| 06/11/2009 | 06/11/2009 | Activate account | | | | Fals |
| | | Undefined (catch all) | | | CC003038408C | |
| 06/11/2009 | 06/11/2009 | Create a new purse | | | | Fals |
| | | Undefined (catch all) | | | CC003038408C | |
| 08/25/2008 | 08/25/2008 | Embossing Complete | | | | Fals |
| | | Undefined (catch all) | | | CC000ED77350 | |
| 08/25/2008 | 08/25/2008 | Embossing Complete | | | | Fals |
| | | Undefined (catch all) | | | CC003092621D | |
| 08/22/2008 | 08/22/2008 | Create a new account | | | | Fals |
| | | Undefined (catch all) | | | CC00C81238D1 | |
| 08/22/2008 | 08/22/2008 | Embossing Pending | | | | Fals |
| | | Undefined (catch all) | | | CC00932AA326 | |

EXHIBIT 6





| | |
|---|---|
| **R/T Number** 09100001 | **Processing Date** 20090526 |
| **Sequence Number** ███7821 | **Amount** 5000.00 |
| **Account Number** ███2073 | **Check Number** 8787 |

**EXHIBIT 7**

**WILLIAM J PROHOFSKY**
10401 CEDAR LAKE RD UNIT 303
MINNETONKA, MN 55305-3271

8835

17-1/910 210
0070372073

6-11-09 Date

Pay to the
Order of _____ Chris Ronan _____ $ 9800⁷⁄₁₀₀

_____ Nine Thousand Eight Hundred _____ Dollars

Wells Fargo Bank, N.A.
Minnesota
wellsfargo.com

For _____

⑆091000019⑆ ⬛2073⑈ 08835

2073    300
$9,800.00
06/12/09 10:46AM
03 09544 0025 160

| | | | |
|---|---|---|---|
| **R/T Number** | 09100001 | **Processing Date** | 20090612 |
| **Sequence Number** | ⬛062 | **Amount** | 9800.00 |
| **Account Number** | ⬛2073 | **Check Number** | 8835 |

EXHIBIT 8

2-24-10

2-10-10

| TOPIC: | DATE: |
|---|---|
| FILE UNDER: | PAGE: |

1. Loyd Security — Pointed — Cross Cate
   628⁴⁰   —1335⁰⁰   711·⁶⁶
   —#885⁰⁰ ✓

2. XL Cel Energy   71674 Echo
   —300

3. XL Cel Energy   11700 Cross
   —400

4. XL Cel   —350⁹⁵   #885 534

5. Cross Lake Constn — 7431   #885⁷⁶   21) Twudd   671
   #886·⁷⁵

6. Baumans   1077   #885⁵   22) Center Point   13

7. American National   708 ⁵⁷   #885⁸⁶   23) Dist   2105
   Bank   #885⁷   24) Medina   30

8. GOTO Inc   —300   #885¹⁴   25) Twty Bank   452
   #885·⁷⁰

9. "   —115   #885 X   26) Medua   4035
   #885·⁷³

10. Moss Barnett   —1091   #886   27) Roma   669
    Client

11. Ray Swanson   —96·²³   #885

12. Centy Point Energy   #885   —

13. Centy Point   —179·⁰⁶   #886⁴

EXHIBIT 9

**Page 1**

```
 1              UNITED STATES BANKRUPTCY COURT

 2                   DISTRICT OF MINNESOTA

 3

 4   ----------------------------------------------

 5   In re:

 6   Dennis E. Hecker,            Bky No. 09-50779

 7           Debtor.

 8   ----------------------------------------------

 9           2004 Examination of WILLIAM PROHOFSKY,

10   taken in the above-entitled matter, pursuant to

11   Notice, before Julie A. Rixe, court reporter and

12   notary public, at 12400 Portland Avenue South,

13   Suite 132, in the City of Burnsville, County of

14   Dakota, State of Minnesota, on the 10th day of

15   February, 2010, commencing at approximately 9:00 a.m.

16

17

18

19

20

21             .     .     .

22

23

24

25
```

**Page 2**

```
 1   APPEARANCES:

 2             RANDALL L. SEAVER, Trustee, and MATTHEW

 3   D. SWANSON, Attorney at Law, Fuller, Seaver &

 4   Ramette, P.A., 12400 Portland Avenue South,

 5   Suite 132, Burnsville, Minnesota 55337, appeared

 6   for and on behalf of the Trustee.

 7             JOSEPH W. DICKER, P.A., Attorney at

 8   Law, 1406 West Lake Street, Suite 209,

 9   Minneapolis, Minnesota 55408, appeared for and

10   on behalf of the Deponent.

11

12

13

14

15

16

17

18

19

20

21

22             WHEREUPON, the following proceedings

23   were duly had and entered of record, to wit:

24

25
```

**Page 3**

```
 1                     I N D E X

 2   WITNESS                                    PAGE

 3   WILLIAM PROHOFSKY
         Examination by Mr. Seaver                4

 4
     PROHOFSKY EXHIBITS:                        PAGE
 5    1 - Withdrawn
      2 - Copy of Walden Auto Leasing III
 6        check dated 5/22/09                     4
      3 - Copy of Walden Auto Leasing III
 7        check dated 5/22/09                     4
      4 - Wells Fargo Bank document              4
 8    5 - Withdrawn
      6 - Withdrawn
 9    7 - Copy of Check 8827                      4
      8 - Copy of Check 4211041251               4
10    9 - Copy of Check 4211041251               4
     10 - Withdrawn
11   11 - Withdrawn
     12 - PMA Wells Fargo documents dated 5/1/09
12        through 5/31/09                         4
     13 - PMA Wells Fargo documents dated 6/1/09
13        through 6/30/09                         4
     14 - PMA Wells Fargo documents dated 7/1/09
14        through 7/31/09                         4
     15 - Withdrawn
15   16 - PMA Wells Fargo documents dated 9/1/09
          through 9/30/09                         4
16   17 - PMA Wells Fargo documents dated 10/1/09
          through 10/31/09                        4
17   18 - PMA Wells Fargo documents dated 11/1/09
          through 11/30/09                        4
18   19 - Handwritten document                   4
     20 - Copy of Check Stub 8787                4
19   21 - Withdrawn
     22 - Copy of bills list                     4
20   23 - Withdrawn
     24 - Copy of handwritten bills list         4
21   25 - Withdrawn
     26 - Copy of Check Stub 8852                4
22   27 - Copy of Check Stub 8835                4
     28 - Withdrawn
23   29 - Withdrawn
     30 - Withdrawn
24   31 - Withdrawn

25
```

**Page 4**

```
 1             I N D E X (Continued)

 2   PROHOFSKY EXHIBITS (Continued):          PAGE
     32 - Withdrawn
 3   33 - Withdrawn
     34 - Withdrawn
 4   35 - Withdrawn
     36 - Wells Fargo documents               4
 5   37 - Withdrawn
     38 - Withdrawn
 6   39 - Copy of Check 8917                   4
     40 - Copy of e-mail                       4
 7   41 - Residential Lease - four pages       4
     42 - Residential lease - six pages        83
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 10

Page 17

1  A  I'm sure there is, but I just can't think of it
2     now.
3  Q  Okay. Did there come a time when Mr. Hecker
4     asked you to hold some money for him?
5  A  Yes.
6  Q  And tell me how that came about.
7  A  We were over at his house, Judith and I,
8     Tamitha's mother, and Tamitha and Denny were
9     arguing. And I think Denny accused her of
10    stealing -- not stealing, taking a certain amount
11    of money. I don't really recall what it is. If
12    you want me to guess, I can guess, but it would
13    be a guess. I think they had come back from Las
14    Vegas, where he did rather well. And he said to
15    me, would you hold this for me and don't tell
16    anybody. It was an envelope. I don't know what
17    was in it. I didn't look.
18 Q  When was this?
19 A  I'm guessing summer of '08. And two days later
20    he said, would you bring it back. Judith and
21    Tamitha were there. I gave it to him in front of
22    them, so they knew about it.
23 Q  In 2009 did he ask you to hold any money for him?
24 A  Not that I can recall.
25 Q  Were there any discussions about putting money

Page 18

1     into an account held in your name to be used to
2     pay his bills?
3  A  Would you repeat that?
4  Q  Yes. In 2009 did you have a discussion with
5     Denny Hecker about putting money into an account
6     held in your name to be used by you to pay
7     Mr. Hecker's bills?
8  A  Are you referring to the checks that you have
9     copies of?
10 Q  I'm asking you if there was any discussion about
11    such a thing?
12 A  I don't think there was ever a discussion about,
13    put money in your account to pay my bills. I
14    think the discussion was, would you pay the
15    bills.
16 Q  Okay. So tell me how that came up, how it came
17    up that the checks that went into your account
18    did go into your account.
19 A  Well, number one, it was transfers too. It
20    wasn't just checks.
21 Q  There were wire transfers also?
22 A  Correct, if that's what you're referring to.
23    Denny asked me if I would pay some bills. And,
24    again, I'm going to give you some opinions. I
25    don't know how much was discussion and how much

Page 19

1     was I think I understood.
2         Sue Miller used to pay all his bills.
3     She used to pay everything, I think. And there
4     was some problems I think with Sue and Tamitha
5     and everything else, and Tamitha was giving Denny
6     a lot of heat about certain bills. And I think
7     Tamitha paid some he gave her and he asked me if
8     I would pay the rest. And I said sure, why not.
9     People always paid his bills. I don't think he
10    ever paid his own bills.
11 Q  So the idea was that he would have money
12    transferred into your personal account, and then
13    you would pay his bills using that money?
14 A  I think there was also written checks given to
15    me --
16 Q  Right.
17 A  -- yes.
18 Q  Checks and wire transfers --
19 A  Correct.
20 Q  -- both? Okay. Let me rephrase it. So the idea
21    was that he would have money in the form of
22    checks and wire transfers transferred into your
23    account at Wells Fargo, and then he would direct
24    you how to use that money to pay his bills?
25 A  I think your word direct is -- I don't know how

Page 20

1     to -- I gave you -- You have copies of the slips
2     I received from him showing who to make them out
3     to and the amounts, if that's what you mean.
4  Q  Okay. So I'll rephrase it again and take that
5     word direct out of there. So the idea was that
6     he would have money transferred by check and wire
7     transfer into your account at Wells Fargo, and
8     then you would use that money to pay his bills?
9  A  You know, what you're saying sounds right, but
10    your words are kind of not real clear.
11 Q  But that sounds correct to you?
12 A  Off the top of my head, I'd have to give it a lot
13    more thought.
14 Q  Well, what was your understanding of what you
15    were supposed to do?
16 A  My understanding was I was going to get money
17    that would be enough to cover the bills that he
18    wanted me to pay.
19 Q  And then he would tell you what bills to pay?
20 A  He didn't tell me. He gave me the written papers
21    that I gave you.
22 Q  Okay. Let me show you what's been marked as
23    Exhibit 2. I'll tell you I marked your tax
24    return as Exhibit 1, but I'm not going to use
25    that.

Page 21

1       Exhibit 2 is a copy of Check
2  Number 1031 from Walden Auto Leasing III, Inc.
3  And that's a check payable to William Prohofsky
4  for $5,000, correct?
5 A Yes.
6 Q Is this one of the checks that he gave you to pay
7  bills with?
8 A Yes.
9 Q Okay. Let me put in front of you at the same
10  time Exhibit 12. And Exhibit 12 is a PMA Wells
11  Fargo statement. It's dated May 31, 2009. And
12  we had control numbers put on the documents that
13  you gave us.
14 A What does control numbers mean?
15 Q Down at the bottom it says Prohofsky 106, so it's
16  Prohofsky 106 through Prohofsky 113. And I'll
17  put that in front of you also.
18       All right. Going back to this Exhibit
19  Number 2, in the middle of that there's something
20  that says Christi, and then it says Christi Rowan
21  in handwriting. Whose writing is that?
22 A The Christi on top is mine. The other one I
23  believe is Denny's.
24 Q Why is that writing there?
25 A Because I made the check out to Christi. He told

Page 22

1  me who to make it out to.
2 Q So you received this $5,000 check, and then you
3  made a check out of your account payable to
4  Christi Rowan?
5 A Correct.
6 Q Okay. Is that what Denny told you to do?
7 A Correct.
8 Q Now, this Exhibit 2, right up at the top it says
9  -- If you look over right under the date --
10 A Here.
11 Q -- it says management fee. But this one wasn't a
12  management fee, correct?
13 A No. It was a reimbursement.
14 Q A reimbursement?
15 A Well, expense reimbursement.
16 Q Were you getting reimbursed for expenses?
17 A Some I did and most of them I didn't. The ones I
18  got reimbursed for were the ones that you have
19  the slips for.
20 Q Is it your testimony that this $5,000 check
21  payable to you is an expense reimbursement check?
22 A You know, I believe so. I'm not sure exactly how
23  to correct it, but I would think it was a
24  reimbursement.
25 Q A reimbursement for what expenses, sir?

Page 23

1 A You know, I was given a list of checks to make
2  out and I -- I don't know the answer to your
3  question.
4 Q You mean it's a reimbursement for the $5,000
5  payment to Christi?
6 A No. I mean it's a reimbursement to my check I
7  made out to her.
8 Q Right. So when you say expense reimbursement,
9  you're just talking about a reimbursement for the
10  $5,000 check that you made to Christi?
11 A The firm gave it back to me, yes.
12       MR. DICKER: Can we go off the record
13  for a second?
14       MR. SEAVER: Sure.
15       (Discussion held off the record.)
16       MR. SEAVER: Let's go back on the
17  record.
18 BY MR. SEAVER:
19 Q We just had a discussion, and I think we're all
20  on the same page on what you're testifying to
21  here.
22 A I hope I am.
23 Q Let me show you Exhibit Number 20, and maybe this
24  will make it easier. That has Control Number
25  Prohofsky 415. This is a copy of a check stub,

Page 24

1  Number 8787 to Christi Rowan for $5,000, correct?
2 A Correct.
3 Q So the $5,000 represented by Exhibit 2 is a
4  reimbursement for that $5,000 check of yours to
5  Christi Rowan?
6 A That's the way I look at it.
7 Q Okay. And did Mr. Hecker personally hand you
8  this check that is Exhibit Number 2?
9 A I don't remember.
10 Q Okay. Where were you when you got it, the check?
11 A The office.
12 Q The office is where?
13 A 500 Ford Road.
14 Q All right. Let me show you now -- I'm going to
15  open Exhibit Number 12, open that to the page
16  that has Prohofsky 110 down on the
17  bottom. We see a check going out there,
18  Number 8787 for $5,000. And that's the check to
19  Christi Rowan, right?
20 A The numbers are the same.
21 Q That is the check to Christi Rowan, right?
22 A As far as I can tell.
23 Q Okay. I'm showing you now what's been marked as
24  Deposition Exhibit Number 3. Deposition Exhibit
25  Number 3 is a document with Control Number

Page 25

1  Prohofsky 14. It is from Walden Auto Leasing
2  Holding Co. to William Prohofsky for $23,000,
3  correct?
4 A  Yes.
5 Q  And ride in the middle of that --
6 A  Excuse me. I've got some mints that will help
7  you if you want.
8 Q  No thank you.
9 A  Are you sure?
10 Q  Yes.
11 A  They're strong.
12 Q  Right in the middle of that there's handwriting.
13  Are those the initials CR?
14 A  I don't believe so.
15 Q  Do you know what they are?
16 A  No imagine -- I have no idea.
17      MR. DICKER: I'm sorry. You're
18  referring to a scrawl in the exact center --
19  almost the exact center of the page?
20      MR. SEAVER: I am.
21      MR. DICKER: Okay. Thank you.
22 BY MR. SEAVER:
23 Q  And did you receive this $23,000 check from
24  Mr. Hecker?
25 A  These -- The best I can recall, these were both

Page 26

1  given to me by this Tom Schwartz.
2 Q  Okay. And it appears that he's one of the
3  signators on both of those checks?
4 A  I've got to look at the other one. Yes.
5 Q  All right. You don't consider either Exhibit 2
6  or Exhibit 3 as income to Bill Prohofsky, do you?
7 A  No.
8 Q  This check, this Exhibit 3 right up at the top
9  says Expense Reimbursement with a date up there.
10  In your opinion, would that be, as you testified
11  on the other one, reimbursement for expenses of
12  Denny's you're paying out?
13 A  For those lists I gave you, part of it, yes.
14 Q  Okay. I'm showing you now what's been marked as
15  Exhibit Number 4. And Exhibit Number 4 has
16  Prohofsky 13 as a control number down at the
17  bottom, which indicates it came from you. Are
18  these deposit slips for the two checks which are
19  Exhibits 2 and 3?
20 A  Yes.
21 Q  All right. Did you take those two checks to
22  Wells Fargo bank to deposit the same day you
23  received them?
24 A  I don't know. I have to look at the dates. What
25  are the checks dated? What were these

Page 27

1  (indicating) dated. Yeah, it appears that both
2  dates coincide.
3 Q  Okay. Now I'm showing you Exhibit Number 5. And
4  you can't see the number there well. There's
5  some control number at the bottom.
6 A  This is one of the slips I gave you?
7 Q  It is, yes. It's a wire detail report, and it
8  relates to a wire transfer into your Wells Fargo
9  account, correct?
10 A  Yes.
11 Q  And let me just put Exhibit 13 in front of you,
12  which is Prohofsky 97 through Prohofsky 105. And
13  I'll turn it to the page of that exhibit that is
14  Prohofsky 100. And right up at the very top,
15  June 4, that's the wire transfer that we're
16  looking at here coming into your account,
17  correct?
18 A  It sure does look like it.
19 Q  Did you discuss this wire transfer with
20  Mr. Hecker?
21 A  I don't remember.
22 Q  Okay. Why was this money being wired into your
23  account?
24 A  To pay those bills that you were talking about.
25 Q  And is it accurate to say that you don't consider

Page 28

1  this $33,057 as income?
2 A  No.
3 Q  That's true, isn't it?
4 A  Yes.
5 Q  Okay.
6 A  Could I ask my attorney something?
7      (Discussion held off the record.)
8 BY MR. SEAVER:
9 Q  All right. I'm showing you now what's been
10  marked as Prohofsky 7. Prohofsky 7 is a copy of
11  the front and back of a check that you provided.
12  It has Prohofsky 4 down on the bottom. It's a
13  check drawn on your Wells Fargo account, correct?
14 A  Yes.
15 Q  And did you get cash for this check on -- It says
16  June 4 of 2009. Did you get cash for that check
17  on that day?
18 A  Yes.
19 Q  All right. Why did you go get cash that day?
20 A  I gave it to Denny Hecker.
21 Q  Did he ask you to go do that?
22 A  Could we go off the record for a minute? I've
23  got to ask him something.
24 Q  I guess you can ask him something.
25 A  Why are you frowning on that?

Page 45

1   bills less the money you had already spent to pay
2   bills?
3 A  I believe so.
4 Q  Okay. So then we see a deduction for CenterPoint
5    Energy because you paid a bill to CenterPoint
6    Energy for $498.52, correct?
7 A  Correct.
8 Q  Then we see a deduction for $10,000 to DH,
9    correct?
10 A  Correct.
11 Q  And that's the 10,000 in gift cards, correct?
12 A  Yes.
13 Q  And then we go down after that and we see
14    something that says $9,800. What does it say
15    after that?
16 A  I gave a check to Denny made out for that amount
17    and there was no name put on it. He says, make
18    out a check for it and leave the name blank.
19    Later on, when I got the check back, I saw that
20    it was made out to Christi Rowan and that's when
21    I wrote it on my check stub, Christi Rowan.
22 Q  Okay. So he told you to write out a check for
23    $9,800, but he didn't tell you who?
24 A  That's correct.
25 Q  Did he just tell you to leave it blank?

Page 46

1 A  Yes.
2 Q  Okay. Here, let me show you Exhibit Number 27.
3    And this has Control Number 463 on it. That's a
4    photocopy of a stub that you produced. And that
5    relates to this $9,800 check, correct?
6 A  Definitely. In fact, it says on there, Gave to
7    Denny, no name, he fill in.
8 Q  That's what that says?
9 A  That's correct.
10 Q  Okay.
11 A  Mr. Seaver, you and I are going to have to go
12    someplace and learn how to read my writing. I
13    think we both have to take lessons. I'm not
14    doing too well either.
15 Q  All right. Continuing on on Exhibit 19, so after
16    the $9,800 deduct, according to this running
17    balance here, you're down at 12,758 and some
18    change, correct?
19 A  Yes.
20 Q  And then you deduct for 6/30/09, $14,180.01,
21    correct?
22 A  That's what it looks like.
23 Q  And those would all relate to checks that you had
24    written?
25 A  Correct.

Page 47

1 Q  Okay. Did you ever buy any gift cards at TCF?
2 A  No. The only check cards I believe I ever bought
3    in my life were the ones you see, that I
4    remember.
5 Q  All right. Let's go to -- I'm putting in front
6    of you Exhibit Number 24. And Exhibit Number 24
7    is two pages. It says Prohofsky 11 and
8    Prohofsky 12 at the bottom. What are these
9    pages, generally?
10 A  These are bills telling me who to make checks out
11    to, and the number after it is the check numbers.
12 Q  All right. So starting over in the left column,
13    the first one says Lloyd Security --
14 A  Yes.
15 Q  -- $623.40. That's not your writing, is it?
16 A  No.
17 Q  Okay. Whose writing is it?
18 A  The reason these papers are a little illegible, I
19    didn't have copies. I had to get copies back
20    from Sue Miller. That's why they're cut off.
21    When you asked for originals, I don't have them.
22    This is how I got them.
23       I don't know about these (indicating).
24    This one (indicating) I don't think so. This
25    (indicating) one I think so.

Page 48

1 Q  We're on Exhibit 24. You think you got that from
2    Sue Miller?
3 A  I know I did, because I told her I didn't have a
4    copy, would you give me a copy.
5 Q  And did that happen after we served the subpoena
6    on you?
7 A  No. That happened right away, because I wanted
8    to have the slip so I could check off my checks
9    when they went through the bank. So this was a
10    day or two later.
11 Q  Back in May or June of 2009?
12 A  Correct, correct.
13 Q  Okay. All right. So back to this, the writing
14    in the left column, do you know whose writing
15    that is, the handwriting?
16 A  I can guess.
17 Q  Just give me your best guess.
18 A  Denny's.
19 Q  And this looks like the kind of paper that he
20    usually keeps notes on, doesn't it?
21 A  You know, I've seen all kinds of papers come from
22    him.
23 Q  And then if we look at this piece of paper,
24    there's a column that says Hunter and another
25    that says Crosslake, correct?

1 A  Yes.

2 Q  And that's not your writing either?

3 A  No.

4 Q  And that would appear to you to be Denny's

5    writing?

6 A  Yes.  But if you look in the middle, where it

7    says $1,335.06, I believe, I combined those two

8    because they were going to the same place and

9    wrote out one check for the two of them.

10 Q  That's your handwriting right --

11 A  In the middle.

12 Q  Where it says 8852 underneath?

13 A  Yes, that's my check number.

14 Q  So did Mr. Hecker give you this Exhibit 24 as the

15    bills you were to pay out of the money coming

16    into your account?

17 A  Correct.

18 Q  And so when you received this exhibit -- Well,

19    the first page of Exhibit 24, did you receive

20    that on a different day than the second page or

21    did you get them both at the same time?

22 A  To the best of my recollection, I think they came

23    a day or so apart, but I don't remember.

24 Q  And you understand I'm talking about these two

25    pages?

1 A  Oh, those two?  No, these I got at the same

2    time.  I'm sorry.

3 Q  So exhibit --

4       MR. DICKER:  Pardon me, Mr. Seaver.

5    Just so that the record is clear, the documents

6    you're referring to are the two pages of

7    Exhibit 24 that are marked Prohofsky 11 and 12,

8    and your testimony is that your best recollection

9    is you received both of these pages at the same

10    time?

11       THE WITNESS:  Yeah.  He was very

12    astute, because he saw me pick this (indicating)

13    up and he put it together.  Thank you for

14    correcting me.

15 BY MR. SEAVER:

16 Q  So back on Exhibit 24, Mr. Hecker gave you those

17    pages at the same time?

18 A  I believe so, yes.

19 Q  Okay.  And when you received these, what you

20    received was this, it's a list of bills that are

21    to be paid from the funds that you were holding,

22    right?

23 A  Yes.

24 Q  And then as you wrote -- is it accurate to say

25    that as you wrote checks out to pay those bills

1    you had been directed to pay, you would write the

2    check number beside them?

3 A  That was -- Yes.

4 Q  And the entries here on Exhibit 24, your entries

5    with the check numbers, over what course of time

6    did you write those checks and put the numbers in

7    here?

8 A  One right after another.

9 Q  So it would be one session?

10 A  You know, I might have went to lunch.  I don't

11    remember.

12 Q  But Mr. Hecker gave you this Exhibit 24, and then

13    shortly after that you sat down and started

14    writing checks out?

15 A  You know, I think so, but it might have been an

16    hour later.  I don't remember.

17 Q  Within a day after that?

18 A  Well, let me think for a minute.  It may not have

19    been.  I really don't recall.  But I remember

20    that $28,000 or $23,000 check and the $5,000

21    check, when I went to deposit it, you have the

22    deposit slip, it shows that, don't ask me why,

23    they credited $100 to my account and held the

24    27,000 -- or, I'm sorry, 27,900, whatever it was,

25    they held because they wanted to make sure the

1    checks were good.  And they had a date, that they

2    wouldn't be good until June 9th or something like

3    that.

4       And I talked to the people at the bank,

5    and finally they got them to say that the checks

6    were good sometime in June.  And then I think

7    that's -- I'd have to look at the dates on these,

8    if you have the dates on my checks.  I think I

9    had to wait until some of the money was clear.

10    So I don't think county money was clear right

11    away.  So I don't think, here it is, here's the

12    deposit, go write out the checks.  I think there

13    was a brief time in there I had to wait.  But,

14    you know, to be truthful with you, I'm foggy

15    on...

16 Q  Okay.  But still on Exhibit 24, you wrote all

17    these checks out and put the numbers in next to

18    the list you had?

19 A  Correct.

20 Q  Okay.  And then did you give the checks to Denny?

21 A  I think to Sue.

22 Q  Sue Miller?

23 A  Yeah.  You know, I'm fuzzy on this, but I think

24    Sue put them in envelopes and mailed them.

25 Q  You weren't the one who put them in envelopes?

Page 65

1 right. I wanted to show the balance because I
2 had made out that 21,000 some odd dollar check
3 for Denny that he said void, which was before the
4 bankruptcy. So at that time that $10,000 was
5 really mine.
6 Q Is there any piece of paper anywhere that might
7 give any support to that testimony you've just
8 given, sir --
9 A Yeah, the statement.
10 Q -- other than this Exhibit 19?
11 A Well, my bank statement itself. The money went
12 in there from the Hecker, whatever, organization
13 and it was in my account. Now, I don't know if
14 I'm stating it correctly, but...
15 Q Did you give all 10,000 of those gift cards to
16 Denny Hecker?
17 A No. I told you I didn't.
18 Q So when I get the detail from Wells Fargo Bank
19 and I see who used those cards, I'm going to see
20 that you used some of them?
21 A Correct.
22 Q Let's look at Exhibit 19 again. The very last
23 line of your running balance here says $14,180.01
24 as of 6/30/09, correct?
25 A That's what it says.

Page 66

1 Q So when you wrote this, at least, that's what you
2 believed as of 6/30 you were still holding from
3 the money you had received?
4 A No, that isn't what it means.
5 Q What does it mean?
6 A You know, I don't know, but I know it doesn't
7 mean that.
8 Q How do you know it doesn't mean that?
9 A Because there wasn't that money left. If you add
10 up, which I did -- If you add up all the checks
11 that cleared, there couldn't possibly have been
12 that kind of money. The checks cleared. You add
13 up the input and the output, it doesn't add up to
14 that.
15 Q All right. But it's certainly your testimony
16 that this $9,800 that we see, that check going
17 out to Christi, that was still Denny Hecker
18 money, correct?
19 A That was money that I received from the Denny
20 Hecker organizations.
21 Q To pay bills of Denny Hecker?
22 A I believe they were all Denny Hecker's.
23 Q When Denny Hecker told you to do something with
24 the money you had received in your account, you
25 did it, right?

Page 67

1 A You know, that's a pretty broad statement.
2 Q But it's true, isn't it?
3 A Not entirely.
4 Q Okay. Well, let's focus on the $9,800 check.
5 Well, tell me why it's not entirely true.
6 A I don't believe it's entirely true because some
7 of the money he told me to pay a bill and we
8 argued and I got to $10,000. I gave some of it
9 back to him in credit cards, so that would make
10 your statement not 100 percent true.
11 Q Okay. Other than those little differences it's
12 true?
13 A I don't know if they're little differences, but I
14 think most of it appears -- I'd have to think
15 more about it, but I think it appears true.
16 Q Generally speaking?
17 A I would say general, yes.
18 Q Generally speaking, when Denny Hecker told you to
19 write a check to so-and-so from the money in your
20 account, you did it?
21 A As long as I deemed it was proper.
22 Q And how did you decide what was proper to do with
23 that money and what wasn't?
24 A Well, if he would have told me to make a check to
25 you, I wouldn't have done it. I would have said

Page 68

1 why.
2 Q Why is that, sir?
3 A Why would I? I mean, I have to have some
4 justification.
5 Q You knew he filed bankruptcy on June 4, didn't
6 you?
7 A You know, I think so.
8 Q All right. But yet on June 11 he told you to
9 write a blank check for $9,800 and you just did
10 that, right?
11 A Yes.
12 Q But you wouldn't have written one to his federal
13 bankruptcy trustee if he told you to do that;
14 that's your testimony?
15 A I don't believe that's my testimony. I think the
16 words are out of context.
17 Q If he would have told you to write that $9,800
18 check to Randall Seaver, Trustee for Denny
19 Hecker, would you have done it?
20 A Probably.
21 Q Tell me again what -- any event -- Let me
22 rephrase it.
23 Was there any time that he told you to
24 write a check to anyone that you didn't do it?
25 A I don't believe so.

Page 69

1 Q Okay. So you followed his directions in writing
2    checks out of that account?
3 A I deemed it was his money.
4 Q And he could do with it as he pleased?
5 A You know, you're telling me certain things that
6    are legal that I don't understand. In my
7    opinion, I don't think I did anything wrong.
8 Q Let me show you exhibit -- Well, so after the
9    $9,800 blank check that you wrote him, is it your
10    testimony all of that money that you had received
11    had been spent?
12 A You know, I'd have to go through my figures. Off
13    the top of my head without checking -- God, I'd
14    have to go through my figures to check, you know,
15    I would think so, but I'm not sure.
16 Q All right. Here's Exhibit Number 26. And
17    Exhibit Number 26 is a group of documents that
18    you produced. They start at Prohofsky 480. And
19    these, again, are check stubs. Do you have that
20    in front of you, sir?
21 A The one you just handed me?
22 Q Yes.
23 A Yes.
24 Q All right. And these are all check stubs for
25    checks that you wrote on June 30 of 2009, aren't

Page 70

1    they?
2 A Can I see those two lists that I made out? I
3    think what had happened, I transposed a date. I
4    think that should have been 5/30 and I think I
5    put 6/30. Because if you take a look at the
6    statements, let's see when they cleared the
7    bank. Let me look at a number, 8860 out of 87.
8 Q Let me show you the July statement. Here's
9    Exhibit 14, your July Wells Fargo statement.
10    Let's just follow some of those checks through
11    that have that 6/30 stub date on them. Let's
12    look for Check Number 8852. That's the first one
13    on here.
14 A 8852.
15 Q Okay. And if you look at July 13 on this second
16    page of this statement, you'll see Check 8852
17    clearing on that date. Do you see that?
18 A No, I don't see that.
19 Q 7/13, Check 8852.
20 A Yep.
21 Q Clears on July 13, right?
22 A Yep.
23 Q Let's look at the next one, 885 --
24 A I agree with what you're saying and I'm trying to
25    remember. Maybe he gave me more to pay other

Page 71

1    bills. Are they the same ones with my check
2    numbers on the slip?
3 Q Look and see.
4 A Here is 8852. Where's 8852. That's the same
5    amount. You know, I have no recollection. I
6    don't know why. I have no idea.
7 Q So back at Exhibit Number 26, these are all check
8    stubs that you wrote to pay Denny Hecker bills
9    and they're all dated 6/30 of '09, correct?
10 A It appears that way.
11 Q Okay. So let's go back -- having looked at that,
12    let's go back to Exhibit 19, where on 6/30/09 you
13    have a balance of $14,180.01. Does it appear to
14    you that when you wrote this, you changed at that
15    time, at the end of June, you were still holding
16    over $14,000 to pay Denny Hecker bills?
17 A It appears that way.
18 Q Okay. Let me show you Exhibit Number 39. This
19    is a check written on your Wells Fargo account
20    jointly payable to TCF and Randall Seaver,
21    correct?
22 A Uh-huh, yes.
23 Q What was that for?
24 A Actually, you know, it was for the rent up at
25    Crosslake, but I do believe that it was only

Page 72

1    supposed to be $2,000 a month, according to my
2    lease.
3 Q But, nonetheless, you sent me this check for
4    $24,000?
5 A I didn't send it to you. I think I gave it to --
6 Q Mr. Skolnick?
7 A I think so.
8 Q And you gave it to him to give to me?
9 A I didn't know if it was going to you or TCF or --
10    I didn't know where it was going.
11 Q Here, I'm just going to put in front of you your
12    PMA account statements for September of 2009,
13    which is Exhibit 16, and October of 2009, which
14    is Exhibit Number 17. Now, your check to me and
15    TCF is dated September 30, correct?
16 A Uh-huh, yes.
17 Q Would you just show me on either of these
18    statements, either September or October, any day
19    that your bank account had funds sufficient to
20    cover this check?
21 A It's not -- There wasn't sufficient funds to
22    cover it.
23 Q Why would you write a check like that?
24 A Because I expected to get 12,000 or half of it
25    from Dan Albright. And I was going to pick up